## TROUP *v.* HART.

WILL. *Life estate. Unlimited power of disposition.* A devise of real or personal property for life, with unlimited power of disposition to the devisee, at his death vests the absolute title to the property devised.

Cases cited: David *v.* Bridgman, 2 Yer., 557; Davis *v.* Richardson, 10 Yer., 290; Thompson *v.* McKissack, 3 Hum., 636; Bean *v.* Myers, 1 Col., 228; Henderson *v.* Vaulx, 10 Yer., 33.

### FROM TIPTON.

Appeal from the Chancery Court. HENRY J. LIVINGSTON, Chancellor.

J. W. & W. J. HARRIS for complainant.

BATE & SMITHEAL and J. M. STEELE for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

The question involved in this case depends upon the construction of the following clause in the will of James Galbreath:

12th. "As to all the rest of my estate, residue and remainders, whatever it may be, the tract of land I now live on, my negro girl Ann, my mules, etc., all and everything belonging to the place, of every kind and description, whatever it may be, I will and bequeath to my loving wife Margaret Galbreath, to have and to hold during life, and to make what disposition she may see proper at her death."

Chancellor Livingston was of opinion that the widow, Margaret Galbreath, took an absolute title to the property, and decreed accordingly.

The exact question now presented arose in the case of *David* v. *Bridgman*, 2 Yer., 557, upon the following clauses in the will of Sampson David: 1st. "It is my will that my beloved wife, Martha David, have all my estate, both real and personal, during her life." 2d. "It is my will that my wife Martha, at her death, may have full power and authority to dispose of all my personal property in any manner she may think proper."

In this case Judges Catron and Peck held, that the widow took the absolute title to the personal property, because the will vested her with the unlimited power of disposal at her death. Judge Catron, in his opinion, says: "That Martha David had the right to use the property, without any right on the part of the distributees of Sampson David to impound it during her lifetime, is, we think, incontrovertible; that

she could sell, give away or destroy it, without legal restraint or molestation by complainants, follows; and that a sale or gift of the property at any period during her life, would have been in effect a disposition at her death, (because then, as well as previously, a subsisting alienation,) we have no doubt." And he adds: "If Martha David, as devisee of her husband, could lawfully part with the property bequeathed at any period after S. David's death, and communicate a good title to the purchaser, it follows that she had the power as effectually to defeat the estate in remainder, as if the words, 'at her death,' had not been inserted in the will."

It is true that Judge Whyte dissented from the opinion of Judge Catron and Peck, and that the reasoning of his dissenting opinion is supported by numerous authorities. But the decision of Judges Catron and Peck has been so long and so often followed in subsequent cases, that we do not feel disposed to regard it as a debatable question. The case of *David* v. *Bridgman* was recognized and approved in *Davis* v. *Richardson*, 10 Yer., 290; *Thompson* v. *McKissack*, 3 Hum., 636; *Bean* v. *Meyers*, 1 Col., 228. And in the case of *Henderson* v. *Vaulx*, 10 Yer., 33, Judge Reese, after expressly approving the case of *David* v. *Brigdman*, distinguishes the former case from the latter, from the fact that it was the apparent intention of the testator, from the language of the will, and from the surrounding circumstances, "to limit and restrict the wife's power of disposing of the property to the time of her death."

Troup *v.* Hart.

We are therefore of opinion that the construction placed upon the clause of the will under consideration by the Chancellor is fully supported by the authorities in our statute, and we therefore affirm his decree with costs.

TURNEY, J., dissenting.

I am of opinion it was clearly the intention of the testator to give to the wife a life estate, with a power of disposition at her death, and if she failed to exercise the power, the estate to go to his next of kin.

Public policy demands that less technicality shall obtain in the construction of wills than in any other instrument, and yet more of it prevails.

Courts should not be held to an adherance to strained or technical construction because pre-decisions have either established or followed them, but ought to determine the intention of the testator, in each particular instance, upon the peculiar phraseology of the will before them, remembering that the draftsmen of wills are most generally unprofessional men, neighbors or friends of the testator in whose honesty and common sense he has confidence, without regard to professional experience or technical proficiency, who speaks in his own language peculiar to ordinary men, and having an ordinary meaning; and always intended to express such intention as ordinary men will naturally understand it to express.

Testing the clause in question by this rule, it is clear to my mind the testator, for good reasons to

himself, meant to place it in the power of the wife through the instrumentality of property as her weapon, to command not only a support for life, but also at the same time respect and kind treatment from those who would be around her. There may have been rebellious and refractory children, grand children or step childred, a selfish next of kin, who could only be kept to their duty to the widow by the love and hope of gain. I use this illustration as one of many reasons why a testator might devise and bequeath as this one has done.

This purpose, or a similar one, being so far accomplished, it is natural the testator should look not only to the probability that the wife knowing his wishes would execute the power in favor of his next of kin should they deserve it, or she failing to dispose of the estate at all, it would, by the law, go to them.

The terms of the clause indicate strength of mutual confidence between husband and wife, and a willingness on the part of the husband that the wife may enjoy his estate, not only materially while she lives after him, but by it command reverence and respect, without absolute disinheritance to his own blood.

It seems to me that many of the constructions given in the books would, if the testator could be reached, startle him by presenting to him an intention in the disposition of his property that had never entered into his mind while living.

One of the greatest troubles given to this court as now constituted, has grown out of the effort to con-

strue the wills of judges and lawyers, where they have attempted to comply with judicial constructions. The more they have seemed to try to make plain, by the light of adjudication, the more they have clouded their purposes. The decisions in questions of construction of wills is nothing more nor less than their construction of former constructions. Each lawyer and judge has his own peculiar views of the meaning of court opinions, hence the trouble of arriving at their meaning in wills.